**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KELLI CARPENTER,

                Plaintiff,

v.                                                                                Civ. No. 14-64 JCH/SCY

DEMING SURGICAL ASSOCIATES and
VICTOR CRUZ,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Motion to Compel Documents. *Doc. 81*. Having reviewed the Motion and the accompanying briefs (*docs. 83, 88*), the Court has decided to deny the Motion for the reasons described below.

**I.**        **Background**

In this medical malpractice lawsuit, Plaintiff alleges that Defendant Victor Cruz and his employer, Defendant Deming Surgical Associates, were negligent in their treatment of Plaintiff during and after her laparoscopic cholecystectomy. *See generally doc. 43*. To support her claim, Plaintiff has hired two experts to potentially testify at trial: Dr. David Countryman and John Fountaine. *Doc. 81*, Ex. 1 at 1. In December 2015, Defendants issued notices of their intent to depose Dr. Countryman and Mr. Fountaine. These notices, entitled "Notice of Oral Deposition Duces Tecum," requested that Dr. Country and Mr. Fountaine bring to the depositions a variety of documents, including: (1) all records which they relied upon in forming their opinions for the case, (2) their correspondence with Plaintiff's counsel, and (3) all their reports for the case. *Doc. 81*, Ex. 2-3. Both notices were served on Plaintiff. *Id.*

On January 8, 2015, Mr. Fountaine appeared for his deposition as required. In response to

1

questioning by Defense counsel, he testified that he had discussed his expert report with Plaintiff's counsel prior to finalizing it. *Doc. 81*, Ex. 4 at 3. He explained that he had emailed a copy of his draft report to Plaintiff's counsel and that Plaintiff's counsel reviewed the draft report and asked him to "add how much total billing [his] office had to date," which Mr. Fountaine did. *Id.* at 3-4. According to him, this was the only change Plaintiff's counsel requested he make to his report. *Id.* at 4. After hearing this testimony, Defense counsel stated that Defendants would like a copy of the email with the draft report. Plaintiff's counsel responded "Okay. I'll see if I can find one." *Id.*

A few days later, on January 14, 2015, the parties reconvened to depose Dr. Countryman. *Doc. 81*, Ex. 5. Like Mr. Fountaine, Dr. Countryman admitted that he had sent Plaintiff's counsel a draft of his expert report in order to receive feedback. *Id.* at 2-3. He testified that Plaintiff's counsel had "found a bunch of misspellings," some wrong dates, and "significant typo errors." *Id.* at 3. In addition, Plaintiff's counsel asked him to "change the order of things." Plaintiff's counsel had not, however, asked him to add anything. In summary, Dr. Countryman maintained that "[t]here was no real change to the substance of the report" made as a result of his discussions with Plaintiff's counsel. *Id.* Nevertheless, Defense counsel asked Plaintiff's counsel for a copy of Dr. Countryman's original draft report. *Id.* In the portion of the transcript provided to the Court, Plaintiff's counsel never responds to or acknowledges this request. *See generally id.*

Subsequently, on January 16, 2015, Defense counsel sent Plaintiff's counsel a letter formally requesting copies of "all email correspondence between [Plaintiff's counsel's] office and [Plaintiff's] experts, in compliance with the notices duces tecum setting their depositions." *Doc. 81*, Ex. 6. Plaintiff's counsel refused to produce the requested documents because (1) the subpoenas were issued to the experts, not Plaintiff or Plaintiff's counsel, (2) the experts were not

2

required to produce the reports under Fed. R. Civ. P. 45 as they had not retained them in the ordinary course of business, and (3) the communications and draft reports were privileged under Fed. R. Civ. P. 26(a)(2)(B) and 26(a)(4)(C). In light of this disagreement, Defendants filed the present motion to compel. Defendants argue that neither Rule 26 nor Rule 45 protects Plaintiff from the requested disclosures. *Docs.* 81, 88. Additionally, Defendants asserts that Plaintiff waived any objections to the subpoenas by failing to timely object to the subpoenas.[1]

## II.  Discussion

### A.  Waiver

Federal Rule of Civil Procedure 45 contains two provisions regarding the timeline for objecting to a subpoena. First, Rule 45(d)(2)(B) states "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection. . . before the earlier of the time specified for compliance or 14 days after the subpoena is served." The Rule then goes on to explain that a court may quash a subpoena "on timely motion." FED. R. CIV. P. 45(d)(3). Although Rule 45 is otherwise silent as to what constitutes a "timely" motion, courts have generally found that a party must object to a subpoena before its return date. *See*, *e.g.*, *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891 (S.D. Ind. 2006) ("a non-party may timely move to quash a subpoena until the subpoena's return date has passed"); *Blaw Knox Corp. v. AMR Industries, Inc.*, 130 F.R.D. 400, 402-403 (E.D. Wis. 1990) (the purpose of requiring parties to object to a subpoena before the

---

[1] In the reply, Defendants argue for the first time that "the same communications at issue in the present motion were requested directly from the Plaintiff months ago in requests for production." Doc. 88 at 6. To the extent, Defendants are contending that Plaintiff should be compelled to produce the requested documents in accordance with Defendants' written discovery requests or that Plaintiff has waived her objections to the production of these documents by failing to object to the written discovery requests, the Court will not consider these arguments since they were not raised in the opening brief. *Hanh Ho Tran v. Trs. of the State Colleges in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived.").

time for compliance "is to enable the court to resolve the matter before all parties prepare for and appear at the deposition").

Here, the fourteen-day objection period does not apply to Plaintiff as the subpoenas at issue were directed to Plaintiff's experts, not to Plaintiff herself. Nevertheless, it is clear that Plaintiff's objections to the subpoenas are untimely under the more general provisions of Rule 45, as Plaintiff neglected to object to the subpoenas prior to the depositions of the experts and also failed to object to Defense counsel's oral request for the relevant documents at the deposition of both Mr. Fountaine and Dr. Countryman.

As Defendants emphasize, it is within the Court's discretion to find that this untimeliness constitutes waiver of Plaintiff's objections. *See Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568 (D.N.M. 1998) (finding that a non-party waived his objections to a subpoena by failing to assert them in a timely manner). Indeed, objection deadlines serve an important purpose: encouraging the prompt and efficient resolution of discovery disputes. When a party fails to object to a deposition subpoena in a timely manner that party risks wasting opposing counsel's time and resources by raising unforeseen objections in the middle of (or after) the deposition. Thus, the best practice is for litigants to read and respond to subpoenas in a punctual manner. While Plaintiff's counsel has not satisfied this obligation, given the circumstances of this case, the Court has decided to forgive Plaintiff's failure to timely object to the subpoenas at issue. *See Ficep Corp. v. Haas Metal Eng'g, Inc.*, Civ. No. 14-243-CM, 2015 U.S. Dist. LEXIS 16483 at *3 (D. Kan. Feb. 11, 2015) ("Some courts have recognized that, in unusual circumstances and for good cause, the failure to act timely will not bar consideration of objections.").

There is no indication that Plaintiff's failure to timely object was either the result of bad faith or an attempt at gamesmanship. Rather, Plaintiff's counsel explained that he believed it was

4

the responsibility of the experts to assert that their reports and communications were privileged. *Doc. 97*. While the Court does not share this view of Rule 26, the Court does not believe that Plaintiff's late assertion of a Rule 26 privilege in any way biased or harmed Defendants; Plaintiff did not prevent Defendants from freely deposing Plaintiff's experts regarding their communications with Plaintiff's counsel and their process for drafting their expert reports. Moreover, the subpoenas that were served on Plaintiff's experts were overly broad; they demanded that the experts bring to the depositions all their communications with Plaintiff's counsel. Both parties agree that, with certain exceptions, Rule 26 protects attorney-expert communications. In the absence of any prejudice, bad faith, or inexcusable neglect, the Court is unwilling to order the disclosure of otherwise privileged information simply because Plaintiff's counsel failed to timely challenge the subpoenas *duces tecum* issued to the experts. To rule otherwise would encourage a game of "gotcha" in which one party could issue an overly broad subpoena *duces tecum* in the hopes that an opponent might miss an objection and, as a result, be required to turn over otherwise non-discoverable material.[2] Thus, rather than ruling against Plaintiff out of hand, the Court will consider the substance of Plaintiff's objections and Defendants' responses.

### B.  Work-Product Protection for Expert's Drafts and Communications

The work-product doctrine generally shields "documents and tangible things that are prepared in anticipation of litigation or for trial" from discovery by the opposing party. FED. R. CIV. P. 26(b)(3). In 2010, an amendment to Rule 26 extended work-product protection to drafts of expert reports and, with certain specific exceptions, communications between a party's attorney and a retained expert witness. FED. R. CIV. P. 26(b)(4)(B-C). Under this amendment, all

---

[2] In stating this concern, the Court is not implying, and has no indication, that such gamesmanship occurred in this case.

5

attorney-expert communications are protected unless they (1) "relate to compensation for the expert's study or testimony," (2) "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed," or (3) "identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." FED. R. CIV. P. 26(b)(4)(C). The express purpose of this amendment was to "alter the outcome in cases that . . . relied on the [prior] formulation [of Rule 26] in requiring disclosure of all attorney-expert communications and draft reports." *Id.* (2010 Comments).

Here, the parties disagree about whether Plaintiff's counsel's communications with the retained experts are discoverable under the above listed "facts or data" exception. *See doc. 83* at 3 and *doc. 88* at 3. Defendant argues that the Court should interpret the "fact or data" exception broadly to include all communications with Plaintiff's counsel which resulted in modifications of the expert reports. *See doc. 81* at 8 and *doc. 88* at 3-4. Plaintiff counters that none of the changes described by the experts "affected the facts, data, analysis or assumptions of the experts." *Doc. 83* at 3.

The Court finds Plaintiff's position more persuasive. Mr. Fountaine testified that the only change he made to his report after speaking with Plaintiff's counsel was to add information about his billing at Plaintiff's counsel's request. A request to add billing information to a report is not a fact, datum, or assumption on which an expert might rely in reaching an opinion; nor does such a request have any relation to the development or formulation of an expert opinion. Thus, the communication regarding this change is not discoverable under Fed. R. Civ. P. 26(b)(4)(C)(ii-iii). While it appears that Plaintiff's counsel edited Dr. Countryman's report more heavily, Dr. Countryman testified that none of these edits changed the substance of his opinion. These mere stylistic edits are not discoverable communications pursuant to the facts, data, or assumptions

exceptions, as Dr. Countryman did not consider or rely on them in forming his opinion.

In their reply, Defendants themselves acknowledge that they have no concrete evidence to support their claim that Plaintiff's counsel's suggested edits provided the experts with factual information that changed the expert's opinion. *See doc. 88* at 3-4 ("Without review of those drafts, it is impossible for Defendants to know which facts and/or data included within those reports were changes, removed or modified. Not only *might* those changes go to the heart of the experts' opinions in this matter . . .) (emphasis added).[3] Speculation that Plaintiff's counsel may have influenced the experts' opinions is an insufficient basis to overcome the experts' sworn testimony that the edits simply involved missing billing information, formatting, misspellings, typographical errors, and organizational changes. If expert-attorney communications were discoverable any time these communications led to the modification of an expert report, attorneys would be discouraged from providing experts with their mental impressions about the clarity, conciseness, and understandability of the expert reports. This is exactly the type of result the 2010 amendment was intended to avoid. FED. R. CIV. P. 26 (2010 comments) (explaining that the Advisory Committee was amending the expert disclosure rules to protect the "mental impressions of counsel;" one purpose of this amendment was to avoid certain "undesirable effects" of routine disclosure of attorney-expert communications, such as rising costs, the employment of consultant experts to shield "sensitive and confidential case analyses," and the

---

[3] At the April 10, 2015 motion hearing, Defense counsel argued that new evidence supported Defendants' claim that Plaintiff's counsel provided the experts with discoverable fact, data, or assumptions during the editing process. *Doc. 97*. Specifically, Defense counsel emphasized that Plaintiff's experts may be updating their reports and that Dr. Countryman signed an affidavit stating that he had been "informed of the definitions of reckless conduct and wanton conduct," since his deposition and that he would have opined that Defendant Cruz's conduct was wanton if asked at his deposition. The Court agrees that any legal definitions provided to the experts in order to obtain their opinion about Defendant's conduct would be discoverable under Rule 26. Defendants have not, however, met and conferred with Plaintiff's counsel about acquiring this information nor have they formally moved to discover this information. Thus, it is not at issue in the present motion and the Court will not enter an order compelling Plaintiff to provide this information at this time.

obstruction of effective communication with testifying experts).

The Court has carefully read and considered the two cases Defendants cite in favor of discovery and finds that neither case provides a sound basis for reading Rule 26(b)(4)(C)(ii) as broadly as Defendants would like. The first case cited by Defendants – *In re Republic of Ecuador*, 735 F.3d 1179 (10th Cir. 2013) – does not involve an interpretation or application of the "fact and data" exception that is at the heart of the present dispute. In that case, the Tenth Circuit considered whether Rule 26(b)(3)(A)'s generic, all-purpose work-product doctrine extended protection to materials provided to an expert in anticipation of litigation no matter what the source. *Id.* at 1182. The appellant, Chevron Corporation, argued that Rule 26(b)(3)(A) barred the discovery of documents its expert received from *non-attorneys*, such as scientists, consultants, and other experts, even though these documents did not fall within the ambit of the specific protections of Rule 26(b)(4). *Id.* at 1181, 1183. The appellees disagreed that Rule 26(b)(3)(A) shielded any expert materials from discovery other than those specifically mentioned in Rule 26(b)(4). *Id.* The Tenth Circuit concurred with the appellees. *Id.* at 1187.

While it engaged in a fulsome analysis of the purpose of the 2010 amendment to Rule 26 in reaching this conclusion, the Tenth Circuit did not specifically clarify what types of materials constitute discoverable "facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed" under Rule 26(b)(4)(C)(ii). Thus, *In re Republic of Ecuador* is of limited assistance in resolving the present matter. To the extent that it illuminates the meaning of "facts or data," it disfavors a far-reaching understanding of Rule 26(b)(4)(C)(ii) that includes all communications from an attorney that result in any modification of an expert report. As the Tenth Circuit explained, in 2010 the Advisory Committee "abandoned [a] 'facts or other information' standard for expert reporting and adopted the [more narrow]

8

'facts or data' standard found in the current version of the Rules." *Id.* at 1186 (citing FED. R. CIV. P. 26(a)(2)(B)(ii)). Although the Advisory Committee intended for "fact and data" to be construed "broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients," *id.* (quoting 2010 comments to Rule 26), Rule 26(b)(4)(C) is not meaningless; when an attorney supplies an expert with non-factual information, such as mental impressions about the expert's work, this information is not discoverable by the opposing party. FED. R. CIV. P. 26 (2010 comments) ("Lawyer-expert communications may cover many topics and . . . the [work-product] protection applies to all other aspects of the communication beyond the excepted topics."). As previously discussed, the only evidence before the Court is that Plaintiff's counsel provided the experts with stylistic suggestions and edits as opposed to factual or other material that affected the experts' opinions. Plaintiff's counsel's communications with the experts, therefore, remain privileged under *In re Republic of Ecuador.*

The second case Defendants cite is more on point. *See Gerke v. Travelers Cas. Ins. Co. of Am.*, 289 F.R.D. 316, 328 (D. Or. 2013) ("[An] expert's adoption or ratification of a lawyer's changes and additions to the expert's report does not preclude opposing counsel from learning how the lawyer's contributions affected the expert's final opinions. . ."). This case is not, however, binding on this Court. Nor is it well-suited to extension beyond its facts. In *Gerke*, the judge sanctioned Plaintiff's counsel for failing to sufficiently review his expert's file prior to deciding what documents to produce in accordance with a prior court order. *Id.* at 323. In the judge's opinion, this delinquency resulted in certain documents not being disclosed in the redacted file or on the privilege log that was submitted to the court. *Id.* The judge's displeasure with Plaintiff's counsel's conduct appears to have prompted the court to adopt a parsimonious

9

reading of the work product protections Rule 26(b)(4) affords to attorney-expert communications.

The Advisory Committee comments and the plain language of Rule 26(b)(4) do not support this reading. *See United States CFTC v. Newell*, 301 F.R.D. 348, 351 (N.D. Ill. 2014) ("The court in *Gerke* was dealing with what it concluded was inappropriate behavior of counsel. To the extent that the decision includes broader statements about Rule 26(b)(4), this court respectfully disagrees with its interpretation of the amendment to that rule."). For instance, in *Gerke*, the judge ordered the disclosure of "any materials," including communications between plaintiff's counsel and the expert, that the plaintiff's expert "reviewed or received even if he did not rely upon them in reaching his opinions." *Gerke*, 289 F.R.D. at 329. This order required plaintiff's counsel to produce certain draft reports that plaintiff's counsel helped clean up and edit. *Id.* at 324-25. While the judge asserted that this outcome was consistent with the "facts and data" privilege exception, *id.* at 328-29, he did not provide any convincing reason, other than his mistrust of Plaintiff's counsel, for ordering disclosure of these apparently routine edits. Rather, to support his opinion, the judge cited exclusively to case law that predates the 2010 amendment, such as *Kooima v. Zacklift Intern., Inc.*, 209 F.R.D. 444, 446-47 (D.S.D. Aug. 20, 2002). Notably, the judge quoted *Kooima* for the proposition that "the 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report. . . . This includes correspondence between counsel and the expert witness." *Id.* at 329. The judge also cited the following excerpt from *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995):

> [A]bsent an extraordinary showing of unfairness that goes well beyond the interest generally protected by the work product doctrine, written and oral communications from a lawyer to an expert that are related to matters about which the expert will offer testimony are discoverable, even when those communications would be deemed opinion work product.

*Id.* In light of the 2010 amendment to Rule 26, neither of these statements is good law. For all of these reasons, the Court finds that Defendants' reliance on *Gerke* is misplaced. Rather than following in *Gerke's* footsteps, the Court will recognize the privileged nature of Plaintiff's counsel's suggested edits under Rule 26(b)(4)(C).

### C.  Disclosure Due to Substantial Need

In their reply, Defendants argue that the Court should order the disclosure of the expert communications and draft reports even if they are protected by the work-product doctrine because there is a recognized exception for cases where "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A). Defendants contend that "there is no doubt the material sought cannot be obtained from another source." *Doc. 88* at 4. This is true. Defendants have not, however, made any showing that they have a substantial need for the materials required. Even without these materials, Defendants will be able to cross-examine Plaintiff's experts about Plaintiff's counsel's involvement in the preparation of their reports. Thus, the Court does not find that the materials should be disclosed under this exception.

IT IS THEREFORE ORDERED that Defendants' Motion to Compel Documents (*Doc. 81*) is DENIED.

/s/ Steven C. Yarbrough  
STEVEN C. YARBROUGH  
UNITED STATES MAGISTRATE JUDGE